```
 1  Timothy Chandler, CA Bar No. 234325
    ALLIANCE DEFENSE FUND
 2  101 Parkshore Drive, Suite 100
    Folsom, CA 95630
 3  Tele: (916) 932-2850; Fax: (916) 932-2951
    tchandler@telladf.org
 4
    David A. Cortman, GA Bar No. 188810*
 5  Joshua B. Bolinger, OH Bar No. 0079594*
    ALLIANCE DEFENSE FUND
 6  1000 Hurricane Shoals Road, NE
    Building D, Suite 600
 7  Lawrenceville, GA 30043
    Tele: (770) 339-0774; Fax: (770) 339-6744
 8  dcortman@telladf.org
    jbolinger@telladf.org
 9
    Benjamin W. Bull, AZ Bar No. 009940
10  Jeremy D. Tedesco, AZ Bar No. 0234847*
    ALLIANCE DEFENSE FUND
11  15100 N. 90th Street
    Scottsdale, AZ 85260
12  Tele: (480) 388-8051; Fax: (480) 444-0028
    bbull@telladf.org
13  jtedesco@telladf.org

14  *Motion to permit appearance pro hac vice submitted concurrently

15  Attorneys for Plaintiff
```

**Filed**
JAN 14 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| P.A., a minor by and through her next friend, N.A., <br><br> Plaintiff, <br><br> v. <br><br> DIANE GORDON, MATTHEW DEAN, MARGIE MITCHELL, PAM PARKER, and ROYCE PETERSON, all individually and in their official capacities as Members of the Campbell Union High School District Board of Trustees; RHONDA FARBER, in her individual capacity and in her official capacity as Superintendent of the Campbell Union High School District; and OWEN HEGE, in his individual capacity and in his official capacity as Principal of Westmont High School, <br><br> Defendants. | CASE NO. C08 00242 PVT <br><br> VERIFIED COMPLAINT <br><br> Nature of Action: Civil Rights Suit Pursuant to 42 U.S.C. § 1983 |

VERIFIED COMPLAINT

COMES NOW the Plaintiff, P.A., by and through her next friend, N.A.[1], pursuant to the Federal Rules of Civil Procedure, and for her causes of action against Defendants avers the following:

## I.

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983, the Equal Access Act, 20 U.S.C. § 4071, *et seq.*, and the First and Fourteenth Amendments to the United States Constitution, brought to remedy a violation of the constitutional and statutory rights of P.A., a student at Westmont High School, located in Campbell, California.

2. Plaintiff brings this action for the reason that her student pro-life club, currently named "Live Action," is denied rights, benefits, and privileges equal to those received by all other officially recognized student clubs at Westmont High School.

3. Defendants have implemented policies and practices which permit chartering of clubs, *i.e.*, official recognition, that are both curriculum related and non-curriculum related.

4. Along with official recognition, student clubs are granted certain benefits and privileges.

5. Plaintiff's Club, while technically permitted to meet on campus, is nonetheless denied equal access to rights, benefits and privileges provided to other student clubs due to the religious and political nature of the Club.

6. Indeed, Defendants' unlawfully censor Plaintiff's intended speech and deny her Club equal rights, benefits, and privileges, by: (i) prohibiting Plaintiff from even discussing the Club with other students at her school; (ii) denying Plaintiff access to morning public address announcements to convey information about upcoming Club activities; (iii) denying Plaintiff access to school bulletin boards to display informative information about the club and its activities; (iv) prohibiting Plaintiff from advertising Club activities and recruiting new members through respectful and non-

---

[1] Pursuant to Civil L.R. 3-17(a)(2), P.A. is identified by her initials, rather than her full name, in order to maintain the privacy of her identity. For this reason also, P.A.'s parent's name is herein indicated only by her initials.

VERIFIED COMPLAINT

2

disruptive flyer distribution efforts during non-instructional time; (v) proscribing Plaintiff's right to freely select a descriptive name for the Club to convey the Club's intended purpose and ideals (*e.g.*, by forbidding Plaintiff to include the phrase "pro-life" in the official club name); (vi) barring Plaintiff from having the Club listed alongside other recognized student clubs on the Westmont High School website; and (vii) denying Plaintiff the opportunity to announce Club meetings and activities on the Westmont High School "Daily Bulletin," made accessible to students online via the school's website.

7. Defendants provide all of the previously mentioned rights, benefits, and privileges to other recognized clubs at the school, such as the Gay Straight Alliance, B-Buoy (a break dancing club); Chess Club; Sci-Fi/Horror Movie Club; Running Club; Key Club, Culture Club, Link Crew, Color Talk, Christian Club, and Anime Club, just to name a few.

8. The Equal Access Act, along with the First and Fourteenth Amendments, prohibit governmental discrimination of this type and guarantee access and treatment of religious and political student clubs equal to that of other non-curriculum related student clubs.

9. Plaintiff brings this action (i) to enjoin Defendants from violating her constitutional and statutory rights, as well as the rights of others interested in Live Action (hereinafter, "Pro-Life Club"), and (ii) to order Defendants to provide to the Club all of the rights, benefits, and privileges they provide to other officially recognized student clubs.

## II.

## JURISDICTION AND VENUE

10. This action arises under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 28 U.S.C. § 2201, 42 U.S.C. §§ 1983 and 1988, and the Equal Access Act, 20 U.S.C. §§ 4071-4074.

11. This Court possesses jurisdiction over Plaintiff's claims by operation of 28 U.S.C. §§ 1331 and 1343.

12. This Court is vested with authority to grant Plaintiff's requested declaratory relief by operation of 28 U.S.C. §§ 2201 and 2202, and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

VERIFIED COMPLAINT

3

13.  This Court is authorized to grant Plaintiff's requested injunctive relief pursuant to 42 U.S.C. § 1983 and Rule 65 of the Federal Rules of Civil Procedure.

14.  This Court is authorized to award the requested nominal damages of one (1) dollar under 28 U.S.C. § 1343(3).

15.  This Court is authorized to award attorneys' fees under 42 U.S.C. § 1988.

16.  Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Northern District of California because the events giving rise to Plaintiff's claims occurred within the District and because all parties are residents of the District.

## III.

## INTRADISTRICT ASSIGNMENT

17.  This action is proper in the San Jose Division of the Northern District because all of the events giving rise to Plaintiff's claims occurred within Santa Clara County.

## IV.

## IDENTIFICATION OF THE PLAINTIFF

18.  Plaintiff P.A., a minor, is a resident of Campbell, California and a student at Westmont High School ("WHS").

19.  P.A. is an adherent of the Christian faith and desires to share her religious and political views and beliefs with her classmates.

20.  Pursuant to her sincerely held religious beliefs, P.A. desires to meet with other students through the Pro-Life Club at WHS.

21.  P.A. believes in the sanctity of life and that abstinence is the best way to avoid unwanted pregnancies.

22.  P.A. desires to reach out to her peers and to offer them love, advice, assistance, education, and service based on her religious and political beliefs and opinions.

23.  P.A. also desires to fellowship together with other students and to discuss relevant issues facing students including, among others, faith and religion; community service; personal responsibility; leadership; assisting underclassmen faced with difficult choices and/or situations;

VERIFIED COMPLAINT

4

sexual abstinence; keeping and raising children in the event of pregnancy; human rights issues; promoting respect and dignity toward others at WHS; and equality of, and respect for, all human life.

24. N.A., next friend, is P.A.'s parent and guardian, and at all times relevant to this Complaint, is a resident of Campbell, California.

## V.
## IDENTIFICATION OF THE DEFENDANTS

25. Defendant DIANE GORDON is the President of the Campbell Union High School District Board of Trustees. Defendant Gordon is sued individually, and in her official capacity.

26. Defendant MATTHEW DEAN is a Member of the Campbell Union High School District Board of Trustees. Defendant Dean is sued individually, and in his official capacity.

27. Defendant MARGIE MITCHELL is a Member of the Campbell Union High School District Board of Trustees. Defendant Mitchell is sued individually, and in her official capacity.

28. Defendant PAM PARKER is a Member of the Campbell Union High School District Board of Trustees. Defendant Parker is sued individually, and in her official capacity.

29. Defendant ROYCE PETERSON is a Member of the Campbell Union High School District Board of Trustees. Defendant Peterson is sued individually, and in her official capacity.

30. The above-named five Defendants (collectively "Board") are responsible for the enactment, enforcement, and existence of policies and practices related to the rights, benefits, and privileges afforded to student clubs at the School.

31. The Board bears responsibility for denying Plaintiff's Club the same rights, benefits, and privileges given to other student clubs at the school pursuant to its policies and practice.

32. The Board is likewise responsible for the implementation and application by the Superintendent and Principal of its policies and practices pertaining to student clubs.

33. The Board is similarly responsible for delegating to the Superintendent and Principal final authority as to the official recognition of student clubs.

34. The Board acquiesced in and approved of Defendant Farber's denial of Plaintiff's request to form a pro-life club.

VERIFIED COMPLAINT

5

35. Defendant RHONDA FARBER is the Superintendent of the Campbell Union High School District.

36. Defendant Farber possesses responsibility, final authority, and discretion, as delegated by the Board, as to the administration of Board policies as they relate to student activities on campus.

37. Defendant Farber possesses responsibility, final authority, and discretion, as delegated by the Board, as to the administration of Board policies related to the establishment of student clubs and to the benefits said clubs receive.

38. In this capacity, Defendant Farber possesses final supervisory responsibility over the Principal of Westmont High School.

39. Defendant Farber is responsible for the Policies and practice leading to the denial of equal benefits to Plaintiff's Club.

40. Defendant Farber is also responsible for the denial of equal benefits to Plaintiff's Club.

41. Defendant Farber instructed Defendant Hege to deny Plaintiff's request to form a pro-life club.

42. Defendant Farber is sued both in her individual capacity and in her official capacity as Superintendent of the District.

43. Defendant OWEN HEGE is the Principal of Westmont High School.

44. Defendant Hege is charged with the administration of Westmont High School, including Board-delegated responsibility, authority, and discretion as to enforcement of Board policies relating to student clubs.

45. Defendant Hege is responsible for the Policies and practice leading to the denial of equal benefits to Plaintiff's Club.

46. Defendant Hege is also responsible for denying equal benefits to Plaintiff's Club.

47. Defendant Hege is sued both in his individual capacity and in his official capacity as Principal of Westmont High School.

48. Defendant Hege made the decision to deny equal benefits to Plaintiff's Club pursuant to the Policy and practice implementation and direction of the Board.

VERIFIED COMPLAINT

6

49. This decision by Defendant Hege to deny equal benefits and privileges to Plaintiff's Club was made at the direction of the Superintendent and of the Board.

## VI.

## STATEMENT OF THE FACTS

**Westmont High School**

50. Westmont High School ("WHS") is a public high school located in Campbell, California.

51. WHS is under the direction of the Board.

52. The School includes grades 9 through 12 and constitutes a secondary school under California law.

53. Upon information and belief, WHS and the Board receive federal financial assistance.

**The Student Club Forum at WHS**

54. The Board, acting through Defendants Farber and Hege, as Superintendent and Principal, respectively, grant official club status to non-curriculum related student clubs.

55. The Board, acting through Defendants Farber and Hege, allow said clubs to meet on school premises at WHS during non-instructional time.

56. Non-curriculum related clubs currently recognized by the Board include, among others, the Gay Straight Alliance; B-Buoy (break dancing); Chess Club; Sci-Fi/Horror Movie Club; Running Club; Key Club; Culture Club; Link Crew; Color Talk; Christian Club; and Invisible Children.

57. The above-mentioned clubs address issues involving, among others, promoting respect, dignity, and safety for students at WHS; premarital sex, including homosexual behavior; community service and involvement; leadership; supporting freshman facing difficult decisions and/or situations; appreciation of cultural identity; equality of, and respect for, all human life regardless of color; faith and religion; and various human rights issues.

58. Participation in such clubs is not required by WHS faculty in connection with curriculum course work.

VERIFIED COMPLAINT

7

59. Participation in such clubs is not directly encouraged by WHS faculty in connection with curriculum course work.

60. Defendants, pursuant to their Policies and practice, permit officially recognized non-curriculum related clubs to conduct meetings during non-instructional time on campus.

61. Defendants, pursuant to their Policies and practice, permit recognized non-curriculum related clubs access to morning public address announcements to convey information about any upcoming club meetings or planned activities to the student body.

62. Additionally, Defendants, pursuant to their Policies and practice, provide recognized non-curriculum related clubs with access to school bulletin boards so that club members may display informative information about any upcoming club activities and/or meetings.

63. Defendants also, pursuant to their Policies and practice, permit recognized non-curriculum related clubs to advertise club activities and meetings through respectful and non-disruptive flyer distribution activities on WHS grounds during non-instructional time.

64. Further, Defendants, pursuant to their Policies and practice, permit recognized non-curriculum related clubs to have a descriptive club name of their own choosing, so that the club may adequately convey its purpose and ideals to interested students.

65. Defendants also permit, pursuant to their Policies and practice, recognized non-curriculum related clubs to have their club name and a description of the club listed on the WHS website.

66. Additionally, Defendants allow, pursuant to their Policies and practice, recognized non-curriculum related clubs to announce Club meetings and/or activities on the WHS "Daily Bulletin," made accessible to students via the school's website.

**Defendants' Denial of Equal Benefits and Privileges to Plaintiff and her Pro-Life Club**

67. In October, 2007, Plaintiff, pursuant to her sincerely held religious and political beliefs, submitted a written request to Defendants requesting to start a pro-life club at WHS.

68. Plaintiff requested that her Club to be granted official club status, with all attendant rights, benefits, and privileges.

69. Plaintiff also asked that the Club's official name be "Live Action – Pro-Life Club."

VERIFIED COMPLAINT

8

70. In response to Plaintiff's request, Defendants proceeded to technically permit Plaintiff and other Club members to meet during non-instructional time, but denied (and continue to deny) Plaintiff and fellow Club members any avenue through which they might tell other students about the Club.

71. For example, Defendants prohibit Plaintiff from even telling other students at WHS about the Club's existence, let alone the Club's intended pro-life message, as it is "too controversial."

72. Defendants also bar Plaintiff access to morning P.A. announcements to convey information about upcoming Club activities to the student body.

73. Defendants additionally deny Plaintiff access to school bulletin boards to display informative information about the Club and its activities.

74. Moreover, Defendants prevent Plaintiff from advertising Club meetings through respectful and non-disruptive flyer distribution activities.

75. Defendants also prohibit Plaintiff from selecting an appropriate and descriptive club name, so that the club might adequately convey its purpose and ideals to interested students.

76. Indeed, Defendants specifically barred, and continue to bar, Plaintiff from using the term "pro-life" in the club name because the name would be "too controversial," compelling Plaintiff to instead choose the less desirable and less descriptive club name "Live Action."

77. Defendants also prohibit Plaintiff from listing the Club on the WHS website under a section identifying and describing other student clubs at the school.

78. In addition, Defendants proscribe Plaintiff from announcing Club meetings and activities on the WHS "Daily Bulletin," made accessible to students online via the school's website.

79. Incredibly, Defendants even refused to provide Plaintiff with information regarding any policies, guidelines, or procedures related to student clubs even though she specifically requested such information.

80. Defendants, acting pursuant to their Policies and practice, denied equal access to the above described rights, benefits, and privileges because of the religious and political nature and speech of the Club.

VERIFIED COMPLAINT

9

## VII.

## ALLEGATIONS OF LAW

81. All of the acts of Defendants, their officers, agents, employees, and servants were executed and are continuing to be executed by the Defendants under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of California.

82. Plaintiff is suffering irreparable harm from the conduct of Defendants.

83. Plaintiff has no adequate or speedy remedy at law to correct or redress the deprivation of her rights by Defendants.

84. Unless the conduct of Defendants is enjoined, Plaintiff will continue to suffer irreparable injury.

**FIRST CAUSE OF ACTION: VIOLATION OF THE EQUAL ACCESS ACT**

85. Plaintiff re-alleges and incorporates herein, as though fully set forth, all previous paragraphs of this Complaint.

86. WHS is a public secondary school under California law, located in Campbell, California.

87. The Board and WHS receive federal financial assistance.

88. Defendants have created a "limited open forum" at WHS within the meaning of the Equal Access Act, Title 20 U.S.C. § 4071, *et seq.*, by permitting one or more non-curriculum related student groups to meet on school premises during non-instructional time.

89. Such clubs include the Gay Straight Alliance, Key Club, Culture Club, Link Crew, Color Talk, Christian Club, and Invisible Children.

90. These clubs address issues including, among others, promoting respect, dignity, and safety for students at WHS; premarital sex, including homosexual behavior; community service and involvement; leadership; supporting freshman facing difficult decisions and/or situations; cultural identity and study; equality of, and respect for, all human life regardless of color; faith and religion; and various human rights issues.

91. Plaintiff's Pro-Life Club has voluntary membership.

92. The Pro-Life Club is open to any student at WHS.

VERIFIED COMPLAINT

10

93. The Pro-Life Club desires to assemble on the campus of WHS during non-instructional time for the purpose of Club meetings, exchange of ideas and information, and discussion of issues, from a religious and political perspective, that are significant to them.

94. Such issues include, among others, those related to faith and religion; community service; personal responsibility; leadership; sexual abstinence; keeping and raising children in the event of pregnancy; human rights issues; equality of, and respect for, all human life; promoting respect and dignity toward others at WHS; and assisting underclassmen at WHS, including freshman, who are faced with difficult decisions and/or situations.

95. The Pro-Life Club's activities are voluntary, student-initiated, and student-directed.

96. Plaintiff does not desire school officials to lead, direct, plan, sponsor, or otherwise control the content or direction of the Club's meetings.

97. Non-WHS students do not direct, conduct, plan, control, or attend Pro-Life Club meetings during non-instructional time on school premises.

98. The Pro-Life Club's activities on campus do not materially and substantially interfere with the orderly conduct of educational activity within WHS.

99. Defendants have denied a fair opportunity, have discriminated against, and have denied Plaintiff and her fellow Club members equal access to all school facilities, benefits, and privileges, because of the religious and political content of the speech and association at the Pro-Life Club meetings.

100. Defendants' Policies and practice cannot be justified by a compelling governmental interest, nor are they narrowly tailored to advance any such interest.

101. Defendants' Policies and practice, both facially and as applied, accordingly abridged and continue to violate the rights of Plaintiff under the Equal Access Act, 20 U.S.C. §§ 4071-4074.

WHEREFORE, Plaintiff respectfully prays that the Court grant the declaratory and injunctive relief set forth hereinafter in the Prayer for Relief.

**SECOND CAUSE OF ACTION: VIOLATION OF THE FREE SPEECH CLAUSE**

102. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 84 of this Complaint.

VERIFIED COMPLAINT

11

103. Defendants have, by Policy and practice, created an open forum by permitting the formation of student clubs at WHS.

104. Defendants' Policies and practice prohibit the equal treatment of Plaintiff's Club sponsored by religious students and containing religious and political speech in this forum.

105. Defendants are prohibiting Plaintiff's speech despite the fact that she desires to address the same or similar issues currently being addressed by other student clubs, including issues related to faith and religion; community service; personal responsibility; leadership; sexual abstinence; keeping and raising children in the event of pregnancy; human rights issues; equality of, and respect for, all human life; promoting respect and dignity toward others at WHS; and assisting underclassmen at WHS, including freshman, who are faced with difficult decisions and/or situations.

106. The unequal treatment of Plaintiff's Club containing religious speech or activities is a content-based restriction in an otherwise open forum.

107. Defendants' denial of Plaintiff's religious and political speech while permitting other secular speech also constitutes viewpoint discrimination.

108. For example, Defendants readily permit the Gay Straight Alliance, which discusses issues that are controversial in nature.

109. Yet Defendants deny Plaintiff's religious and political speech for the stated reason that it is controversial.

110. Such viewpoint discrimination is unconstitutional in any type of forum.

111. The Free Speech Clause also recognizes and protects the right to association.

112. Plaintiff's Club is an expressive association that desires to advocate its Christian message and viewpoints at WHS.

113. Defendants violate Plaintiff's Club's right to association by denying them official status as a recognized student club, and all the rights, privileges, and benefits attendant thereto, based solely on the Club's intended religious and political speech, ideologies, philosophies, and beliefs.

114. Defendants' Policies and practice impose an unconstitutional prior restraint because they vest District officials with the unbridled discretion to permit or refuse protected speech equal access to the forum.

VERIFIED COMPLAINT

12

115. If Defendants claim they have no written policies relating to official recognition of student clubs, their practices amount to a Policy.

116. Moreover, if Defendants possess no specific written policies to guide their actions as to official recognition of student clubs, this too amounts to an unconstitutional prior restraint.

117. Defendants' lack of specific written policies permit District officials to exercise unbridled discretion in permitting or refusing protected speech on the basis of the religious content and/or viewpoint of a student club's proposed speech.

118. Defendants' Policies and practice are overbroad because they sweep within their ambit protected First Amendment rights in the form of religious speech.

119. The overbreadth of Defendants' Policies and practice chills protected speech by discouraging individuals and groups from applying for recognition in the forum for purposes of engaging in certain protected speech.

120. Defendants' Policies and practice chill, deter, and restrict Plaintiff from using District facilities on an equal basis with others to discuss issues from a religious perspective.

121. Defendants have interpreted and applied the Policies to disqualify Plaintiff from accessing equally all facilities under their control and otherwise open to student groups, solely because of the religious and political nature of Plaintiff's activities, as well as the religious and political content and viewpoint of the Club's speech.

122. Defendant's Policies, as interpreted and applied by them to prohibit equal use as requested by Plaintiff, are not the least restrictive means necessary to serve any compelling interest which Defendants seek thereby to secure.

123. Defendants' Policies and practice, both facially and as applied, accordingly violate Plaintiff's right to Free Speech as guaranteed by the First Amendment to the United States Constitution as incorporated and applied to state action under the Fourteenth Amendment.

WHEREFORE, Plaintiff respectfully prays that the Court grant the declaratory and injunctive relief set forth hereinafter in the prayer for relief.

VERIFIED COMPLAINT

13

**THIRD CAUSE OF ACTION: VIOLATION OF THE EQUAL PROTECTION CLAUSE**

124. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 84 of this Complaint.

125. The Equal Protection Clause of the Fourteenth Amendment requires that the government treat similarly situated persons equally.

126. Defendants have opened the forum to Plaintiff's Club by permitting the formation of other student clubs.

127. Defendants, however, have denied Plaintiff's Club equal access to all school facilities, benefits, and privileges.

128. By discriminating against the content and viewpoint of Plaintiff's speech, Defendants are treating Plaintiff and Plaintiff's Club differently than other similar situated public school students and student clubs on the basis of the religious content and viewpoint of Plaintiff's speech.

129. Defendants' Policies and practice violate various constitutional rights of Plaintiff, such as rights of free speech, equal protection, and free exercise.

130. Defendants lack a rational or compelling state interest for such disparate treatment of Plaintiff.

131. Defendants' denial of access to Plaintiff is not narrowly tailored.

132. Accordingly, the Policies and practice of Defendants, both facially and as applied, violate Plaintiff's right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the declaratory and injunctive relief set forth hereinafter in the Prayer for Relief.

**FOURTH CAUSE OF ACTION: VIOLATION OF THE DUE PROCESS CLAUSE**

133. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 84 of this Complaint.

134. Plaintiff sought, and continues to seek, equal access to all of the rights, benefits, and privileges provided to other student clubs.

135. Further, Plaintiff's Club satisfies the Policies' criteria for student club recognition, whether labeled by Defendants as a non-curriculum or co-curriculum club.

136. Despite Plaintiff's satisfying the Policies' criteria, Defendants' Policies and practice have been written and applied to prohibit Plaintiff and her Club from gaining equal access to relevant benefits and privileges due to the Club's religious and political speech.

137. Defendants' Policies and practice are vague and allow for unbridled discretion in determining which student clubs do and do not satisfy student club criteria and thus qualify for all club rights, benefits, and privileges.

138. Defendants' Polices grant unbridled discretion in that they lack any definitions or guidelines as to how to determine whether a student club satisfies club criteria and thereby qualifies for access to all club rights, benefits, and privileges.

139. Defendants' Policies fail to include any definitions or guidelines as to what might constitute "controversial" student club speech.

140. As such, Defendants are afforded discretion pursuant to their vague Policies to permit controversial speech by the Gay Straight Alliance student club but deny Plaintiff's religious and political speech for the stated reason that it is controversial.

141. Defendants' Policies and practice, both facially and as applied, accordingly violate Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the declaratory and injunctive relief set forth hereinafter in the Prayer for Relief.

### FIFTH CAUSE OF ACTION: VIOLATION OF THE FREE EXERCISE OF RELIGION CLAUSE

139. Plaintiff re-alleges and incorporates herein, as though fully set forth, Paragraphs 1 through 84 of this Complaint.

140. Plaintiff desires to engage in expressive activities on the basis of sincerely held religious beliefs and to share her beliefs with others.

VERIFIED COMPLAINT

15

141. Defendants' Policies and practice substantially burden Plaintiff's free exercise of religion by conditioning receipt of government benefits on foregoing her free exercise rights.

142. Defendants' Policies and practice force Plaintiff to choose between engaging in religious speech and foregoing the governmental benefit of equal access to the Club, or foregoing the free exercise of religion to receive the access.

143. Defendants Policies and practice substantially burden Plaintiff's free exercise of religion by denying her permission to access all facilities equally in order to meet with like-minded individuals to discuss religious topics and to spread her message.

144. Defendants' Policies and practice substantially burden Plaintiff's free exercise of religion by denying her (i) the ability to even discuss the Club with other students at school; (ii) access to morning P.A. announcements to convey information about upcoming club activities; (iii) access to school bulletin boards to display informative information about the club and its activities; (iv) an opportunity to advertise club meetings through respectful and non-disruptive flyer distribution activities; (v) the ability to select a descriptive name for the club to adequately convey the Club's purpose and ideals (*i.e.*, inclusion of the term "pro-life" in the official club name); (vi) the ability to be listed on the WHS website along with other recognized student clubs; and (vii) the ability to announce Club meetings and activities on the WHS "Daily Bulletin," made accessible to students online via the school's website.

145. Defendants' Policies and practice constitutes the imposition of special disabilities on Plaintiff due to her religion and her intent to engage in religious expression through her Club.

146. These special disabilities placed on Plaintiff are neither neutral nor of general applicability.

147. Defendants' Policies and practice cannot be justified by a compelling governmental interest and is not narrowly tailored to advance any such interest.

148. Defendants' interpretation and application of their Policies chill Plaintiff's freedom of religious discussion and exercise, both of which are fundamental rights guaranteed Plaintiff by the First Amendment.

VERIFIED COMPLAINT

149. Defendants' Policies and practice, both facially and as applied, constitute an excessive burden on Plaintiff's rights to freedom in the exercise of religion and have violated the Free Exercise Clause of the First Amendment to the United States Constitution.

WHEREFORE, Plaintiff respectfully prays that the Court grant the declaratory and injunctive relief set forth hereinafter in the prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgement as follows:

a. That this Court issue a Preliminary and Permanent Injunction, restraining Defendants, their officers, agents, employees, and all other persons acting in active concert with them from enforcing the Policies that prohibit Plaintiff's Pro-Life Club from receiving equal access to <u>all</u> club benefits and privileges, thereby requiring Defendants to grant the Club equal access;

b. That this Court render a Declaratory Judgment declaring as unconstitutional facially and as-applied the District's Policies and practices that prohibit Plaintiff and other Club members from receiving equal access to all club rights, benefits, and privileges;

c. That this Court adjudge, decree, and declare the rights and other legal relations of the parties to the subject matter here in controversy, in order that such declarations shall have the force and effect of final judgment;

d. That this Court retain jurisdiction of this matter for the purpose of enforcing any Orders;

e. That the Court award Plaintiff's costs and expenses of this action, including a reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988.

f. That this Court award nominal damages in the amount of one (1) dollar for the violation of Plaintiff's constitutional rights;

g. That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiff; and

h. That the Court grant such other and further relief as the Court deems equitable and just in the circumstances.

VERIFIED COMPLAINT

17

Dated this 10th day of January, 2008.

Respectfully submitted,

*[signature]*

Timothy Chandler, CA Bar No. 234325
*Local Counsel*
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, CA 95630
Tele: (916) 932-2850; Fax: (916) 932-2951
tchandler@telladf.org

David A. Cortman, GA Bar No.188810*
*Lead Counsel*
Joshua B. Bolinger, OH Bar No. 0079594*
ALLIANCE DEFENSE FUND
1000 Hurricane Shoals Road, NE
Building D, Suite 600
Lawrenceville, GA 30043
Tele: (770) 339-0774; Fax: (770) 339-6744
dcortman@telladf.org
jbolinger@telladf.org

Benjamin W. Bull, AZ Bar No. 009940
Jeremy D. Tedesco, AZ Bar No. 0234847*
ALLIANCE DEFENSE FUND
15100 N. 90th Street
Scottsdale, AZ 85260
Tele: (480) 388-8051; Fax: (480) 444-0028
bbull@telladf.org
jtedesco@telladf.org

*Motion to permit appearance *pro hac vice* submitted concurrently

*Attorneys for Plaintiff*

VERIFIED COMPLAINT

18